**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| Michael Davis, ) | |
| ) | C/A No. 9:12-2244-CMC-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Carolyn W. Colvin, ) | |
| Acting Commissioner of Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff appealed pursuant to 42 U.S.C. § 405(g). The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, *et seq.*, D.S.C.

The Report, filed on September 27, 2013, recommends that the decision of the Commissioner be affirmed. Dkt. No. 16. On October 25, 2013, Plaintiff filed objections to the Report. Dkt. No. 21. On November 12, 2013, the Commissioner filed a response to Plaintiff's objections. Dkt. No. 22. For reasons stated below, the court adopts the Report and affirms the decision of the

---

[1] Carolyn W. Colvin is substituted as the Defendant in this action because she became the Acting Commissioner of Social Security on February 14, 2013. As provided in the Social Security Act, "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." 42 U.S.C. § 405(g). For ease, the court refers to the Acting Commissioner as the Commissioner.

Commissioner.

## BACKGROUND

Plaintiff applied for DIB and SSI on September 22, 2009, alleging disability as of April 10, 2009 due to multiple physical and mental problems, including COPD, emphysema, herniated lumbar spine, arthritis, anxiety and depression, and memory loss. Plaintiff's claims were denied initially and upon reconsideration. On February 14, 2011, a hearing was held before an Administrative Law Judge ("ALJ"). The ALJ denied Plaintiff's claims in a decision on March 11, 2011. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the determination of the ALJ the final decision of the Commissioner. Plaintiff filed this action on August 7, 2012. Dkt. No. 1.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes

a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence and reached through application of the correct legal standard. *Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## DISCUSSION

The Magistrate Judge recommends that the court affirm the Commissioner's decision because it is supported by substantial evidence. Plaintiff objects to the Report, arguing that the Magistrate Judge erred in finding that the ALJ (1) properly weighed Dr. Nancy Voight's opinion; (2) did not err in considering Plaintiff's failure to obtain treatment; and (3) included all of Plaintiff's limitations in his residual functional capacity ("RFC").

**I. Dr. Voight's Opinion.** Dr. Nancy Voight met with Plaintiff on three occasions for a neuropsychological evaluation upon referral by another physician. As a result, Dr. Voight produced a six-page, single-spaced report summarizing her findings. The Magistrate Judge thoroughly summarized Dr. Voight's findings in the Report. Report at 4-7.

Plaintiff objects to the Report's finding that the ALJ adequately discussed and weighed Dr. Voight's opinions. Plaintiff argues that the ALJ omitted certain aspects of Dr. Voight's report from

his decision, and that when the omitted findings were provided in a hypothetical to the vocational expert ("VE"), the VE opined that Plaintiff was unable to work. Plaintiff's counsel asked the VE whether a person could work if he is unable to "manage the emotional stresses in his life," to which the VE responded no.[2] Tr. 494-45. In presenting this hypothetical, Plaintiff relied on Dr. Voight's notation that Plaintiff's "adaptive capacities are not sufficient for him to manage the emotional stresses in his life." Dr. Voight, however, opined three sentences later (while continuing to discuss Plaintiff's emotional and behavioral problems) that "[i]n fairly structured situations in which he knows what is expected of him, he likely functions normally." Tr. 434. This sentence was not included in the hypothetical by Plaintiff's counsel.[3] As a result, the hypothetical presented by

---

[2] After this hypothetical, the following exchange occurred between the VE and Plaintiff's counsel:
> A [VE]: That's hard to gauge. I mean, he can't – I mean, what – you say he can't manage emotionally?
> Q [Plaintiff's counsel]: Uh-huh.
> A: How does that apply to work?
> Q: He's not able – in his life, that would be work at any time; work, sleep, whatever, at home, I mean work at home, in his entire life, is the way I read it.
> A: I mean, if he can't manage emotional feelings in his work, then he wouldn't be able to work.
> Tr. 495.

[3] The ALJ specifically addressed this hypothetical in his decision. :

> The claimant's representative also asked whether the claimant could work if, based on the examination of Dr. Voight (Exhibit 22F), the claimant had limitations including the inability to manage the emotional stresses of his life; cope with the ordinary demands of life secondary to poor coping skills; and make everyday decisions, rendering his judgment suspect. Here, the vocational expert expressed difficulty with analyzing these factors in vocational terms, until the claimant's representative extrapolated these limitations beyond the findings of Dr. Voight. As such, again, I find this testimony to be unpersuasive.

Tr. 35.

4

Plaintiff's counsel was an inaccurate presentation of Dr. Voight's opinion and Plaintiff's reliance on the VE's response is, therefore, misplaced.

In determining Plaintiff's RFC, the ALJ limited Plaintiff to simple, routine work, which is consistent with Dr. Voight's finding that Plaintiff would likely function normally in fairly structured situations. Plaintiff has failed to explain how the limitation to simple, routine work is inconsistent with Dr. Voight's opinion that Plaintiff likely functions normally in fairly structured situations. Although the ALJ could have further described Dr. Voight's six-page report in his decision, the court agrees with the Report that Plaintiff has failed to demonstrate that the ALJ's RFC determination is inconsistent with Dr. Voight's report.

Plaintiff also objects to the Report, arguing that the Magistrate Judge did not address his argument that the ALJ erred by not specifying the weight assigned to Dr. Voight's opinion. Plaintiff argues that the ALJ's failure to specify the weight assigned to the opinion of Dr. Voight, a consultative psychologist, constitutes reversible error. Although an ALJ is required by Social Security regulations to assign weight to all medical opinions, *see* 20 C.F.R. § 416.927(e)(2)(ii), an ALJ's failure to expressly state the weight given to a medical opinion may be harmless error when the opinion is consistent with the ALJ's RFC determination. *See Morgan v. Barnhart*, 142 F. App'x 716, 722–23 (4th Cir. 2005) (holding that any error in failing to credit a medical opinion was harmless where ALJ incorporated results of functional capacity exam, which was consistent with medical opinion, into plaintiff's RFC); *Rivera v. Colvin*, No. 5:11–CV–569–FL, 2013 WL 2433515 (E.D.N.C. June 4, 2013) ("ALJ's failure to expressly state the weight given to a medical opinion may be harmless error, when the opinion is not relevant to the disability determination or when it is consistent with the ALJ's RFC determination."). Here, although the ALJ erred by not specifying

the weight assigned to Dr. Voight's opinion, that error was harmless because, as explained above and in the Report, Dr. Voight's opinion is consistent with the ALJ's RFC determination. *See* Report at 9 (Plaintiff's RFC is "consistent with Dr. Voight's determination that Plaintiff had poor coping skills and an 'avoidant' personality but was nevertheless able to function normally in fairly structured situations in which he knows what is expected of him and that he was able to perform simple tasks."). For these reasons, the court finds no reversible error as to the treatment of Dr. Voight's opinion.

**II. Failure to Obtain Treatment.** Plaintiff argues that the ALJ improperly discounted Plaintiff's credibility because he failed to obtain treatment. Plaintiff contends that any failure to obtain treatment was due to lack of financial ability, and thus the ALJ could not penalize Plaintiff for failing to obtain treatment. The Report addresses Plaintiff's argument by first finding that the record does not support Plaintiff's assertion that his failure to obtain treatment in all instances was due to lack of funds. Report at 11-12. Second, the Report finds that, even assuming the ALJ erred in concluding that Plaintiff failed to obtain recommended treatment, such error was harmless because "[t]he ALJ's finding that Plaintiff was not disabled was not based on non-compliance or failure of the Plaintiff to obtain treatment." *Id.* at 12.

In determining Plaintiff's RFC, the ALJ explained that, after "Dr. Maughon offered to complete diagnostic arthroscopy" in response to Plaintiff's complaints of knee pain, Plaintiff "failed to follow through on that treatment plan." Tr. 28. The ALJ also noted that "Dr. Maughon recommended that the claimant have more physical therapy; yet in June 2010, he noted that the claimant had again failed to follow-up on that treatment recommendation." *Id.* Finally, in evaluating Plaintiff's credibility, the ALJ cited the aforementioned instances as examples of when,

6

"at times, the claimant has failed to fully avail himself of all reasonably recommended medical treatment." Tr. 31. The ALJ explained that "[t]his failure on the part of the claimant illustrates that his allegations suggest much greater severity than does the objective evidence." *Id.*

As explained in the Report (Report at 12), the record demonstrates that Plaintiff expressed concern to Dr. Maughon about affording physical therapy.[4] Tr. 415. To the extent the ALJ improperly discounted Plaintiff's credibility for failing to obtain or follow-through with treatment, the court agrees with the Report that such error was harmless. The ALJ cited multiple reasons, in addition to Plaintiff's failure to obtain treatment, for discounting Plaintiff's credibility: Plaintiff's activities of daily living; mild and minimal findings that are inconsistent with Plaintiff's allegations; routine and/or conservative treatment had been generally successful in controlling Plaintiff's mental impairments and back disorder; and inconsistent statements and actions by Plaintiff. These reasons are supported by the record and substantial evidence supports the ALJ's decision to discount Plaintiff's credibility. Because the ALJ did not rely solely on Plaintiff's failure to obtain or follow through with treatment to discount Plaintiff's credibility, and the ALJ's credibility determination is supported by substantial evidence, the court finds that this error is harmless. *See Carmickle v. Comm'r, Social Security Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal.").

---

[4] As also explained in the Report, factors other than lack of funds contributed to Plaintiff's failure to follow through with treatment in some instances. Report at 11. For example, Plaintiff informed Dr. Maughon that he had hospital sponsorship for knee surgery. The record indicates that Plaintiff's knee surgery was cancelled because he had the flu.

7

**III.  RFC.**  Plaintiff argued to the Magistrate Judge that the ALJ failed to include all of Plaintiff's limitations in his RFC.  The Report finds that the RFC properly included all of Plaintiff's limitations.  Plaintiff objects to this finding, arguing that the ALJ erred by not limiting Plaintiff to a "low stress work environment," as state agency psychologist Dr. Calhoun had opined.  Plaintiff contends that, although the ALJ limited Plaintiff to "unskilled" jobs, unskilled and low stress are not the same.

> The ALJ presented the following hypothetical to the VE:
>
> The first hypothetical would place this person in a range of light exertion as defined by Social Security, which is 20 pounds occasionally, 10 frequently.  In addition he can only occasionally push or pull with his legs.  He needs the ability to sit or stand at approximately 30 to – well, 30-minute intervals.  Shouldn't be climbing ladders, ropes, or scaffolds; can only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; needs to avoid concentrated exposure to extreme temperature changes, as well as avoid concentrated exposure to harsh environmental irritants such as fumes, gases, dust.
> Mentally and emotionally this person would be reduced to a range of simple routine work where he doesn't have to deal with the public as customers.  And for this hypothetical, best if this person were to work alone or with a small group, where you're not subjected to large crowds.

Tr. 491.  In response to this hypothetical, the VE testified that Plaintiff would be able to work.  The ALJ adopted this hypothetical as Plaintiff's RFC.

Plaintiff cites to one sentence in Dr. Calhoun's opinion in which he opined that Plaintiff "would likely benefit from a low stress work environment."  Tr. 411.  Dr. Calhoun did not define "low stress work environment."  Dr. Calhoun did, however, opine that Plaintiff "is not well-suited for meeting the demands of working with the general public."  *Id.*  Although the ALJ did not include the term "low stress" in Plaintiff's RFC, the ALJ limited Plaintiff to simple, routine work, precluded Plaintiff from interacting with the public as customers and with large crowds, and limited Plaintiff to working alone or with a small group.  *See White v. Comm'r of Social Security*, 572 F.3d 272, 280 (6th Cir. 2009) ("I am defining low stress as one where there is no requirement to work with the

8

general public, nor in close contact with co-workers."); *Yensick v. Barnhart*, 245 Fed. Appx. 176, 179 (7th Cir. 2007) ("Unskilled low stress defined as one- and two-step processes, routine and repetitive tasks, primarily working with things rather than people, entry level."). Plaintiff has not identified an alternative definition of low stress work or a low stress work environment supported by Dr. Calhoun's opinion or the other opinion evidence.[5] The court, therefore, concludes that the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, the court adopts the Report and Recommendation of the Magistrate Judge and affirms the decision of the Commissioner.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
Senior United States District Judge

Columbia, South Carolina
January 15, 2014

---

[5] Plaintiff has similarly not identified, and the court has not located, a definition of low stress work or low stress work environment in the Social Security regulations. *Cf.* SSR 85-15 (explaining how persons with mental impairments may react differently to workplace stressors, and requiring "[a]ny impairment-related limitations created by an individual's response to demands of work . . . be reflected in the RFC assessment.").

9